## Amick v. Taylor, et al.

(Decided February 13, 1925.)

### Appeal from Pike Circuit Court.

1. New Trial—False Representations that no Judgment was Sought Against Defendant Against whom Default Judgment was Subsequently Taken Warranted New Trial.—Conduct of plaintiff in representing to party defendant, against whom he subsequently took default judgment, that no judgment against him was sought and in inducing him to make no defense constitutes fraud warranting granting of new trial at instance of such party defendant.

2. New Trial—Motion for New Trial During Term at which Judgment Rendered Held Not Too Late though Filed More than Three Days After Judgment.—Motion for new trial filed during term at which judgment was rendered is not too late, though filed more than three days after judgment, if filed as soon as fraud alleged as grounds for motion was discovered.

3. Appeal and Error—Affidavit Filed in Support of Motion for New Trial Not Included in Record Must be Presumed Sufficient.—Affi-

davit not found in record, but which order granting new trial indicates was filed in lower court in support of motion, must be presumed sufficient to support court's action in granting motion.

4. New Trial—Matter of Granting New Trial is Within Discretion of Trial Court.—Matter of granting new trial is within discretion of trial court.

5. Trespass—Verdict for Defendant Held Against Evidence.—Verdict for defendant charged with trespass on realty, in that he had cut and removed therefrom timber, held so flagrantly against evidence as to require reversal.

STRATTON & STEPHENSON for appellant.

O. A. STUMP and PICKLESIMER & STEELE for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming in part and reversing in part.

The appellant brought this action in the nature of a claim and delivery originally against Bradley Taylor, Sidney Taylor, J. H. Blackburn and Ben Blackburn. He alleged that these defendants trespassed on certain realty owned by him and cut and removed therefrom timber which he sought to recover by this action. No bond was filed for the immediate repossession of the timber. In due time the four named defendants filed their answer in two paragraphs, the first of which was a traverse, and the second of which pleaded that they cut the timber solely as the hired employes of one Geo. D. Kendrick and the Van Sant-Kitchen Lumber Company, and that they had no personal interest in the same. A demurrer interposed to this answer was overruled, whereupon its affirmative allegations were controverted of record. When the case came on to be tried, the trial court was of the opinion that Geo. D. Kendrick ought to be made a party defendant. Whereupon the case was continued and the appellant by proper amendments did make Kendrick a party defendant. Summons was duly served upon him in September, 1922. In March, 1923, the case came on to be tried again and Kendrick having failed to appear, a default judgment was entered against him and a jury was impanelled to assess the value and damages which it did in the sum of $2,587.50. It found, however, for the other four defendants. There was no objection or exception saved by appellant to this judgment in favor of these four defendants, nor any motion or

grounds for a new trial filed by him as to them. Hence he cannot now complain of the judgment in their favor.

This trial was held on March 12, 1923. On March 18, 1923, Kendrick appeared and filed a motion for a new trial based on three grounds, the first being that he was not before the court at the time of the trial. The record as above noted does not support this ground. The other two grounds were, in substance, that the appellant had advised him that the suit did not affect him; that appellant would not take judgment against him, and for him not to appear as appellant only intended to prosecute the action against the Van Sant-Kitchen Lumber Company; that when the case was called for trial, appellant told his regular attorney, who had looked after his legal interests for a number of years, that appellant had talked with him and he had agreed to make no defense, and for these reasons neither he nor his attorney had made defense to the action. Of course these facts if true constituted fraud and warranted the granting of a new trial. Appellant insists, however, that the court which did grant appellee, Kendrick, a new trial should not have done so; first, because the motion for a new trial was made more than three days after the verdict and judgment; and, secondly, there were no affidavits or proof supporting his motion for a new trial filed by Kendrick, whereas appellant filed affidavits which are found in the record not only specifically denying the statements in the motion and grounds for a new trial, but also stating facts which plainly put the blame for the default judgment solely upon Kendrick. As far as the first ground is concerned, the motion for a new trial having been filed at the same term of court in which the judgment was rendered, it was not too late, though filed more than three days after judgment, provided it was filed as soon as Kendrick discovered the alleged fraud practiced upon him. See Callahan Construction Co. v. Williams, 160 Ky. 814, 170 S. W. 203. Whether it was filed as soon as Kendrick discovered his alleged grounds brings us to a consideration of the appellant's other objection to the granting of the new trial. It is true there are no affidavits filed by Kendrick in support of his motion found in the record brought to this court, but in the order granting the new trial the court said: "The defendant, Geo. D. Kendrick, having filed motion and grounds for new trial, and having filed affidavit in support of same,

and the court being advised, sustains said motion and the verdict and judgment of the court is hereby set aside, and the defendant, Geo. D. Kendrick, is granted a new trial.'' From this order it appears that the court did have before it some affidavit. In its absence, we must presume that it supported the court in its action, and as the matter of granting new trials is within the discretion of the trial court, we cannot say in view of the state of this record that it erred.

After the new trial had been granted him, Kendrick filed his answer in two paragraphs, the first of which was a traverse, and the second of which was that he had taken the contract to cut the timber in question from Van Sant-Kitchen Lumber Company, but before he had cut any he had been taken ill, whereupon he surrendered his contract to the Van Sant-Kitchen people. After a demurrer had been overruled to this second paragraph, it was controverted of record and the parties went to trial. Despite Kendrick's denial in his answer, the evidence disclosed that he had cut 100 trees under his contract, and the evidence further disclosed that the value of these trees was about $750.00. It also appeared that the original defendants had also cut a lot of trees but whether as agents of Kendrick or as agents of the Van Sant-Kitchen Lumber Company was in sharp dispute. The jury would have been warranted under the evidence on this branch of the case to find either for appellant or appellee.

The real dispute of the case, however, turned on where the 100 trees came from which Kendrick admitted he had cut. Appellant and his witness testified positively that they came from the appellant's tract of land, title to which he traced back to the Commonwealth. Kendrick did not attack appellant's title, but tried to show that these 100 trees were not cut within the description of appellant's patent or deed. The only testimony he adduced to support this proposition was the following:

"Q. Are you acquainted with the land described in this deed (appellant's land) which I have in my hand, that you just read? A. Not very well.

"Q. Did you cut any timber within the description set out in this deed? A. No, sir, I did not.

"Q. Then if this land lies on both sides of the Big Shoal Hollow and Hurrican, you did not cut any within this deed? A. No, sir, not in there; it was all on the lower side of the branch, and not on the side next to Big Shoal Hollow.''

And on cross-examination:

"Q. You do not know where these lines run?
A. No, sir, I never seen them run out.
"Q. I mean this 60 acres of land? A. No, sir.
"Q. You cannot tell the jury whether or not
the amount of timber cut was on this boundary or
not? A. No, sir, cannot say, but what I cut was on
the lower side of the branch."

There is no evidence whatever in this case to show
that the lower side of the branch was not within the ap-
pellant's boundary and he testifies positively that the
timber cut was within his boundary. The evidence of
Kendrick is so vague and uncertain as to where he cut
the 100 trees with reference to appellant's boundary that
in our judgment it does not overcome the positive state-
ments of appellant and his witnesses that the cutting
was within the boundary. Therefore, the verdict of the
jury for the defendant, Kendrick, is, on this record,
flagrantly against the evidence.

The first judgment in this case rendered on March
12, 1923, in favor of the first four named defendants is
affirmed, and the second judgment in this case found on
the 14th day of July, 1923, in favor of Kendrick is re-
versed with directions to grant the appellant a new trial
herein.

Affirmed in part and reversed in part.